IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KHALIL HAMMOND, et. al.,                  :
                                          :
        Plaintiffs,                       :         CIVIL ACTION
                                          :
        v.                                :         No. 24-cv-0922
                                          :
PA DOC, *et al.*,                         :
                                          :
        Defendants.                       :

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2024, upon consideration of the
Motion of Commonwealth Defendants Pennsylvania Department of Corrections, Laurel Harry,
George M. Little, Michael Wenerowicz and Lucas Malishchak, move to transfer this matter to
the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a), it is hereby ORDERED that
that the Motion is GRANTED.  It is hereby ORDERED that the Clerk of Court is directed to
send this case to the United States District Court for the Middle District of Pennsylvania and to
CLOSE the case in the Eastern District of Pennsylvania.

IN THE ALTERNATIVE, upon consideration of the Motion of Commonwealth
Defendants, Pennsylvania Department of Corrections, Laurel Harry, George M. Little, Michael
Wenerowicz and Lucas Malishchak, to strike Plaintiffs' class certification, it is hereby
ORDERED that that the Motion is GRANTED.  It is hereby ORDERED that Plaintiffs' class
certification is hereby DENIED.

IN THE ALTERNATIVE, upon consideration of the Motion of Commonwealth
Defendants, Pennsylvania Department of Corrections, Laurel Harry, George M. Little, Michael

Wenerowicz and Lucas Malishchak, to partially dismiss Plaintiffs' Complaint, it is hereby

ORDERED that the Motion is GRANTED.  All of Plaintiffs' claims regarding D-Roster inmates

in the putative "Mental Health Class" and "Mental Health Damages Class" are hereby

DISMISSED; all Individual Plaintiffs' and prospective "Mental Health Class" and "Mental

Health Damage Class" members are hereby DISMISSED from asserting claims in Count II of

Plaintiffs' Complaint;  Plaintiffs' Claims of a violation of the ADA against Defendant Secretary

Harry in Count III of Plaintiffs' Complaint are hereby DISMISSED as to Secretary Harry, only;

Plaintiffs' claim of a violation of the Eighth Amendment on behalf of the "Prolonged Solitary

Confinement Damages Class" and "Mental Health Damages Class," contained in Counts I and II

in Plaintiffs' Complaint are hereby DISMISSED.


**BY THE COURT:**


_____
Savage, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHALIL HAMMOND, et. al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-cv-0922 |
| | : | |
| PA DOC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**COMMONWEALTH DEFENDANTS' MOTION TO TRANSFER; OR, IN THE ALTERNATIVE, STRIKE CLASS CERTIFICATION; OR, IN THE <u>ALTERNATIVE, PARTIALLY DISMISS</u>**

Defendants Pennsylvania Department of Corrections, Laurel Harry, George M. Little, Michael Wenerowicz and Lucas Malishchak (hereinafter "Commonwealth Defendants"), move to transfer this matter to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). In the alternative, Commonwealth Defendants move to strike Plaintiffs' class certification, pursuant to Fed. R. Civ. P. 12(f). In the alternative, Commonwealth Defendants move to partially dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The reasons for this Motion are stated in the accompanying memorandum of law.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

By:     _s/ Sarina Kaplan_____
        Sarina Kaplan
Office of Attorney General                Senior Deputy Attorney General
1600 Arch St., Suite 300                  Attorney I.D. No. 209738
Philadelphia, PA 19103
Phone: (267) 768-3964                     Nicole R. DiTomo
Fax:    (717) 772-4526                    Chief Deputy Attorney General
skaplan@attorneygeneral.gov               Civil Litigation Section

 Date:  May 7, 2024

4

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................7

II.     PROCEDURAL HISTORY ....................................................................8

III.    STATEMENT OF FACTS ......................................................................8

IV.     STANDARDS OF REVIEW ...................................................................9

    A.    Transfer of Venue .........................................................................9

    B.    Class Certification ........................................................................9

    C.    Striking Class Certification at Preliminary Juncture ...................11

    D.    Failure to State a Claim .............................................................15

    E.    Qualified Immunity ...................................................................16

V.      ARGUMENT ......................................................................................17

    A.    The Middle District of Pennsylvania is the Appropriate Venue ...............17

        1.   Plaintiff's Choice of Forum Weighs In Favor Of Transfer to Middle District ..................................................................18

        2.   Defendant's Choice Of Forum Weighs In Favor Of Transfer to Middle District ..................................................................19

        3.   Claims Arose In Middle District; Weighs In Favor of Transfer to Middle District ..................................................................20

        4.   The Convenience of the Parties, Location of Books and Records, and Practical Considerations Weigh in Favor of Transfer to Middle District ..................................................................22

        5.   Local Interests Weigh In Favor of Transfer to Middle District ..........23

    B.    Plaintiffs' Class Claims Cannot Proceed For Plaintiffs' Failure to Comply With Rule 23(a); 23(b); and Failure to Allege Class Ascertainability ...............................................................24

1.   Plaintiffs Lack of Ascertainability Renders Class Action Inappropriate ...................................................................24

2.   Plaintiffs' Failure to Meet Requirements of Rule 23(a) Renders Class Action Inappropriate......................................................28

   a. Plaintiffs Fail To Allege Common Issues of Law or Fact Among Proposed Class…………………………………………31

3.   Plaintiffs' Failure to Meet Requirements of Rule 23(b) Renders Class Action Inappropriate ..................................................34

   a. Plaintiffs Fail to Meet 23(b)(3) Predominance Requirement…….34

   b. Plaintiffs Fail to Meet 23(b)(2) Cohesiveness Requirement………37

C.   Partial Dismissal for Failure to State A Claim………………………..40

1.   Plaintiffs' Claims Regarding D-Roster Inmates In Putative Mental Health Damages Class Should Be Dismissed For Failure To Present Claim That Conditions Of Confinement Are Unconstitutional..................................................................40

2.   Individual Plaintiffs And Prospective "Mental Health Class" and "Mental Health Damage Class" Members Should Be Precluded From Relief In Count II Because Of Duplicity With Count I; "Prolonged Solitary Confinement Class" and "Prolonged Solitary Confinement Damages Class" Should Be Dismissed For Lack of Representation………………………………………..42

3.   ADA Claim Contained In Count III Should Be Dismissed Against Defendant Harry ...................................................................45

4.   Qualified Immunity As To Eighth Amendment Claims....................45

VI.   CONCLUSION ...............................................................................50

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHALIL HAMMOND, et. al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-cv-0922 |
| | : | |
| PA DOC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF COMMONWEALTH DEFENDANTS
MOTION TO TRANSFER; OR, IN THE ALTERNATIVE, STRIKE CLASS
CERTIFICATION; OR, IN THE ALTERNATIVE, PARTIALLY DISMISS
PLAINTIFFS' COMPLAINT**

## I.      INTRODUCTION

Plaintiffs' Complaint alleges this class action lawsuit against Defendants, Pennsylvania

Department of Corrections, Laurel Harry, George M. Little, Michael Wenerowicz and Lucas

Malishchak (collectively, "Commonwealth Defendants"), for purportedly violative conditions

experienced by seven separate classes of inmates as a result of what Plaintiffs qualify as "solitary

confinement." The Complaint is void of any objective or established definition of "solitary

confinement" by which Plaintiffs asserts their claims against Defendants' actions or inactions.

Commonwealth Defendants move to transfer Plaintiffs' Complaint to the move

appropriate venue, the Middle District of Pennsylvania.  In the alternative, Commonwealth

Defendants move to strike Plaintiffs' class certification.  Lastly, still, in the alternative,

Commonwealth Defendants seek to partially dismiss Plaintiffs' Complaint on multiple grounds,

including duplicity of relief sought, failure to identify proper class representatives, qualified

immunity and failure to state a claim for violation of the ADA/RA against individually named Defendant Harry.

## II.      PROCEDURAL HISTORY

The six Plaintiffs in this putative class action are inmates housed in six different State Correctional Institutions ("SCI") throughout the Commonwealth of Pennsylvania. Complaint, ECF 1, ¶¶ 18-23. On March 4, 2024, through counsel, Plaintiffs filed a complaint pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). *Id*. Plaintiffs generally allege that the Department of Corrections ("DOC") employs "solitary confinement" throughout its various institutions, specifically within Security Level 5 ("SL5") housing units.  Plaintiffs further challenge the alleged failure to provide adequate due process for inmates on the Restricted Release List ("RRL") and the Intensive Management Unit ("IMU"), in violation of the Fourteenth Amendment. Finally, Plaintiffs assert that the Defendants fail to offer accommodations that satisfy the ADA and RA to individuals who otherwise qualify. *Id*. This action includes seven sub-classes, five of which seek injunctive relief and two of which seek damages.

## III.      STATEMENT OF FACTS

The named Plaintiffs, Kahlil Hammond, David Thompson, Antoine Walker, Muwsa Greene, Tyrone Leonard and Malika Henderson, are inmates incarcerated in varying housing units and institutions within the DOC.

The Complaint is vast in scope – totaling nearly 500 paragraphs - and purports to describe the violative conditions experienced by seven separate classes of inmates alleged to have been harmed by "solitary confinement." Notably, the Complaint lacks a precise, objective, and established definition of "solitary confinement" by which the Department's practices could be fairly judged. Instead, Plaintiffs concoct a standard that relies chiefly upon the nature of social

interactions – whether they are "normal" or "meaningful" – and require that prison officials meet this opaque standard by providing "positive environmental stimulation, programming and activity." Complaint, ECF 1, ¶¶ 4, 83. (emphasis added). By Plaintiff's imprecise definition, it is not sufficient to simply institute an out-of-cell metric that also ensures adequate social interaction; that social interaction must also meet an ethereal standard of "normal and meaningful." *Id*.

A focus of Plaintiffs' suit is the Restricted Housing Units ("RHU"), though Plaintiffs acknowledge that the DOC's current policy requires three hours of out-of-cell time, seven days a week. Complaint, ECF 1, ¶ 99. Nonetheless, Plaintiffs assert that this time is constitutionally insufficient, citing to the discretion afforded to each facility's superintendent regarding the nature of the out of cell time. Complaint, ECF 1, ¶¶ 100-101. Similarly, Plaintiffs assert that the IMU also employs constitutionally substandard conditions. Plaintiffs take issue with the quality of the social interaction provided, however, they acknowledge that inmates are offered increasing amounts of out-of-cell time and increasingly generous privileges as they progress through the program. For instance, Plaintiffs highlight that at phase three of the program, where the inmates are offered 3 hours of out of cell time, the inmates are "restrained to a table to be allowed on a pod with a very small number of people." According to Plaintiffs, this is not a "meaningful" way to conduct social and programmatic activities. Complaint, ECF 1, ¶¶146-147.

The Complaint further notes that the DOC assigns every inmate a letter designation from A to D on its Mental Health / Intellectual Disability Roster (MH/ID Roster). Complaint, ECF 1, ¶ 158. A-Roster inmates have not identified psychiatric or intellectual disability needs and no history of psychiatric treatment. Complaint, ECF 1, ¶ 159. B-Roster inmates have a history of psychiatric treatment but no current need for psychiatric treatment and no current need for follow-up or support from psychology staff. Complaint, ECF 1, ¶ 160. C-Roster inmates are currently

receiving psychological treatment and may be receiving psychiatric treatment, including psychotropic medications, but are not currently diagnosed with a "serious mental illness" (SMI) as defined by the DOC. Complaint, ECF 1, ¶ 161. Finally, D-Roster inmates are currently diagnosed with an SMI, intellectual disability, or "credible functional impairment," or were found "guilty but mentally ill" in their criminal cases. Complaint, ECF 1, ¶ 162.

Plaintiffs also oppose the manner in which the DOC houses inmates by mental health classification. Complaint, ECF 1, ¶¶ 158-169. Although Plaintiffs aver the DOC's medical providers "frequently change" inmates' classification from D to C, thereby depriving them of psychological services and additional out of cell time provided to D roster inmates, Plaintiffs do not directly address the DOC's treatment of D-Roster inmates in a restrictive environment. Pursuant to DOC policy, D-Roster inmates receive 20 hours out-of-cell time per week. *See* Complaint, ECF 1, ¶ 163; 165-166.

The expansiveness of the Complaint extends to the identification of the classes - where allegations establish seven seemingly discrete, but functionally overlapping groups. First, the "Mental Health Class" is defined as "[a]ll individuals who are currently or in the future will be housed in an SL5 unit in the Pennsylvania Department of Corrections (DOC) and who have ever had a "C" or "D" designation on the DOC's MH/ID Roster." Complaint, ECF 1, ¶ 369. Second, the "Prolonged Solitary Confinement Class" is defined as "[a]ll individuals who are currently or in the future will be housed in any SL5 unit in the Pennsylvania Department of Corrections and who have spent three years or longer, whether cumulative or continuous, in an SL5 unit." Complaint, ECF 1. 1, ¶ 370. Third, the "Mental Health Damages Class" consists of "[a]ll individuals housed in an SL5 unit in the Pennsylvania Department of Corrections (DOC) at any time since March 4, 2022 who have ever had a "C" or "D" designation on the DOC's MH/ID

Roster." Complaint, ECF 1, ¶ 374. Fourth, the "Prolonged Solitary Confinement Damages Class" consists of "[a]ll individuals who have spent three years or longer, whether cumulative or continuous, in any SL5 unit in the DOC and have been housed in an SL5 unit at any time since March 4, 2022."Complaint, ECF 1, ¶ 375. The other three classes are the "RRL Class" the "Disability Class" and the "IMU Class." *See* Doc. 1, ¶¶ 368-374.

The Complaint raises six causes of action. Complaint, ECF 1, ¶¶ 394-431. First, all Individual Plaintiffs, Mental Health  and Mental Health Damages Classes claim that Defendants' placement of these individuals in restricted housing violates the Eighth Amendment, arguing Defendants were deliberately indifferent despite a well-known risk of substantial harm. Complaint, ECF 1, ¶¶ 394-399. Second, all Individual Plaintiffs, the Prolonged Solitary Confinement and Prolonged Solitary Confinement Damages Classes raise an identical claim as Count 1. Complaint, ECF 1, ¶¶ 400-405. Third, all Individual Plaintiffs,  Disability and Mental Health Damages Classes claim that the DOC and Secretary Harry, in her official capacity, have violated the ADA. Complaint, ECF 1, ¶¶ 406-414.  Fourth, the Individual Plaintiffs, Disability and Mental Health Damages Classes allege the DOC has violated the RA. Complaint, ECF 1, ¶¶ 415-421. Fifth, Plaintiffs Hammond, Walker, Henderson and the RRL Class assert a Procedural Due Process claim against Defendants Harry and Wenerowicz. Complaint, ECF 1, ¶¶ 422-431. Finally, Plaintiffs Hammond, Walker and the IMU Class, assert a procedural due process claim against Defendants Harry and Wenerowicz. Complaint, ECF 1, ¶¶ 427-431.

As relief, Plaintiffs seek money damages for the Individual Plaintiffs and Mental Health Damages Class for violations of the Eighth Amendment, ADA, and RA. Complaint, ECF 1, p. 62. Monetary relief is also sought for the Prolonged Solitary Confinement Damages Class Members for violations of the Eighth Amendment.  Complaint, ECF 1, p. 62.

IV.     **STANDARD OF REVIEW**

A.  **Transfer of Venue**

Even where venue in the current forum is technically proper, a court may transfer a case to a more appropriate district where (1) the case could have been brought initially in the proposed transferee forum; (2) the proposed forum will be more convenient for the parties and witnesses; and, (3) transfer will be in the interest of justice. 28 U.S.C. § 1404(a). A district court has discretion in deciding a motion for transfer of venue based on the individual characteristics of the case. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

B.  **Class Certification**

The class-action device is an exception to the rule that litigation is usually " 'conducted by and on behalf of the individual named parties only.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013)). A plaintiff seeking class certification bears the burden of proving that the action satisfies the four threshold requirements of Federal Rule of Civil Procedure 23(a), and that the action qualifies under one of the three subdivisions of Federal Rule of Civil Procedure 23(b). *Eisen v. Carliesle & Jacquelin*, 417 U.S. 156, 163 (1974).

Rule 23 does not set forth a mere pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. *Id.* Plaintiffs bear the burden of proof to show that the requirements in Rules 23(a) and (b) are met. *Williams v. City of Phila.,* 270 F.R.D. 208, 214 (E.D.Pa. 2010) (citing *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974)). When faced with "potentially cumbersome" classes, Rule 23 gives district courts broad discretion in

determining whether to certify a class and how to manage a certified class. *Id.* (citing *Reiter v. Sonotone Corp.,* 442 U.S. 330, 345 (1979)).

In addition, courts have incorporated the "implicit" requirement that a class be "definite" or "ascertainable." *Marcus v. BMW of N. America,* 687 F.3d 583, 596 (3d Cir.2012)). The word "ascertainable" does not appear in the text of Rule 23. However, "[a]lthough not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a 'class.' " *Shelton v. Bledsoe,* 775 F.3d 554, 559 (3d. Cir. 2015) (citing 7A C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 1760 (3d ed.2005)). In order for a class to be ascertainable, the class must be precisely defined "with reference to objective criteria" and "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal–Mart Stores, Inc.,* 725 F.3d 349, 355 (3d Cir.2013) (quoting *Marcus,* 687 F.3d at 593).

The preliminary analysis requiring ascertainability "dovetails with, but is separate from, Rule 23(c)(1)(B)'s requirement that the class include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Id.* (citing *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.,* 453 F.3d 179, 187–88 (3d Cir.2006)). Without a definition of the claims, issues, or defenses to be treated on a class basis, the class may not be certified. *Id.* at 188.

The Court is charged with the responsibility of employing a rigorous analysis to ensure compliance with Rule 23. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). "The party seeking certification bears the burden of establishing each element of Rule 23 by a

preponderance of the evidence." *Marcus*, 687 F.3d at 591 (citing *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 307 (3d Cir. 2008)).

## C. **Striking Class Certification at Preliminary Juncture**

The authority to strike class allegations stems from Federal Rules of Civil Procedure 12(f), 23(c)(1)(A) . *Bell v Cheswick Generating Station, Genon Power Midwest. L.P.,* Civil Action No. 12–929, 2015 WL 401443, *2 (W.D.Pa. Jan 28, 2015) (citing Fed.R.Civ.P. 12(f) as authority for the District Court to strike class allegations); *In re Paulsboro Derailment Cases,* 2014 WL 1371712, *2 (D.N.J.2014) ("A motion to strike class allegations implicates Federal Rules of Civil Procedure 12(f) and 23(c)(1)(a).... A further procedural vehicle is provided by Federal Rule of Civil Procedure Rule 23(d)(1)(D), which provides that a 'court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.' "). Fed.R.Civ.P. 12(f), 23(c)(1)(A).  These Rules, together, provide authority for the Court to strike the class allegations from Plaintiffs' Complaint, if appropriate, even before Plaintiffs move for class certification.  *Bell*, 2015 WL 401443, *2.

The Supreme Court of the United States has recognized that, with respect to class certification under Federal Rule of Civil Procedure 23, "[s]ometimes the issues are plain enough from the pleadings to determine whether" class certification is appropriate in a given case. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). The Third Circuit Court of Appeals has explained that "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," a court may strike class allegations contained in a complaint. *Landsmand & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011); *see also Bombin v. Southwest Airlines, Co.,* 529 F.Supp.3d 411, 422 (E.D.Pa. 2021).   Granting such a motion before class certification is appropriate "where '[n]o amount of additional class discovery

will alter th[e] conclusion' that the class is not maintainable." *Thompson v. Merck & Co.*, No. C.A. 01-1004, 2004 WL 62710, *2 (E.D. Pa. Jan. 6, 2004).

Regardless of whether a defendant files a motion to strike class allegations pursuant to Rule 12(f) based upon insufficient class allegations in a complaint, or a plaintiff files a motion to certify a class pursuant to Rule 23 based upon a more fully developed record, it is the plaintiff's burden to prove that the requirements set forth in Rule 23 are met, and the court must accordingly apply Rule 23. *Dieter v Aldi*, *Inc.,* CIV. ACTION NO. 2:18-00846, 2018 WL 6191586, *3 (W.D.Pa. Nov 28, 2018) (citing *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 302 n.19; 1 (3d. Cir. 201); *In re Railways,* 395 F.Supp.3d 464, 498 (W.D.Pa. 2019); *Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, Civ. Action No. 12-929, 2015 WL 401443, at *3 (W.D. Pa. Jan. 28, 2015) ("accelerating the class certification question does not alter the traditional Rule 23 burdens...."). "Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." *Id.* Thus, plaintiffs have the burden to allege sufficient facts to make a prima facie showing that the requirements of Rule 23 are satisfied, or that at least discovery is likely to produce substantiation of the class allegations. *Id.*

### D. Failure to State a Claim

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of

the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a…plaintiff can prove facts that the…plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

### E.  Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731,735 (2011). Lower courts have the discretion to decide which question to analyze first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned

16

courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." *Id*. (internal quotations omitted); *see also al-Kidd*, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case directly on point, but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id*. at 743 (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

## V.   ARGUMENT

### A.  The Middle District of Pennsylvania is the Appropriate Venue

Congress has codified the doctrine of forum non conveniens provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007); *see* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). Section 1404(a) provides for transfer when both the original and requested venues are proper, yet "the convenience of parties and witnesses" and "the interest of justice" favor the requested venue over the original one.  28 U.S.C. § 1404(a).  In making this decision, the Third Circuit has provided the following factors for consideration: (1) the plaintiff's choice of forum; (2) the defendant's

preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive and inefficient; and, (9) public interest factors, such as congestion of court dockets and the local interest in deciding the controversy. *Jumara*, 55 F.3d at 879-80.

The "courts should not limit consideration to only the enumerated factors, but should also consider 'all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Edwards v. Equifax Information Services, LLC*, 2018 WL 3046603, at *2 (E.D. Pa. 2018)).

A weighing of the *Jumara* factors weighs in favor of transferring this matter to the Middle District of Pennsylvania, for the reasons elaborated upon in more detail below.

### 1. Plaintiff's Choice of Forum Weighs In Favor Of Transfer to Middle District

The weight accorded to Plaintiffs' choice of forum is considerably reduced in class and derivative actions, where each of many potential plaintiffs may claim the right to have the action heard in his home forum, and where the nominal plaintiff's role in the litigation is likely to be quite minimal. *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947); *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1313-14 (E.D. Pa. 1982); *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996). A"plaintiff's choice of forum becomes 'substantially less important' when he sues representatively on behalf of a class." *See Panitch v. Quaker Oats Co.*, 2017 WL 1333285 * 6 (E.D. Pa. April 5, 2017).

The Supreme Court has also held that: "When the plaintiff's choice is not its home forum ... the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the

chosen forum is appropriate is in such cases 'less reasonable.' " *Ragmund v. Talisman Energy USA, Inc.*, Civil Action No. 16-711, 2016 WL 5794227 *5 (W.D. Pa. Aug. 31, 2016) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

Furthermore, Plaintiffs' choice of forum should be given less weight where the violations that they complain of -- constitutional violations incurred as a result of DOC policies -- occurred outside of their chosen forum. *See, e.g., Sinochem Int'l Co..,* 549 U.S. at 430; *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 564 (M.D. Pa. 2015); *Kogok v. Fields,* 448 F.Supp. 197, 201 (E.D.Pa.1978).

With all named Plaintiffs, except one, domiciled outside of the Eastern District, Exhibit 1, Decl., ¶16(a-f),  and with all operative facts having occurred outside of the Eastern District, Exhibit 1, Decl., ¶4 , Plaintiffs will have no explanation for why filing suit in this forum demonstrates that litigating here is more convenient for them.

2.   **Defendant's Choice Of Forum Weighs In Favor Of Transfer to Middle District**

The Department of Corrections' Central Office is located at 1920 Technology Parkway Mechanicsburg, PA 17050, in Cumberland County.  Exhibit 1, Decl, ¶3. The policies governing the challenged placements are generated at the DOC's Central Office. Exhibit 1, Decl, ¶4. Individually named Defendants, Harry, Wenerowicz, Malishchak, and Little all work at the DOC's Central Headquarters.[1] Exhibit 1, Decl., ¶13(a-d).  All but one of the identified Defendants reside in the Middle District.  *Id.*  Although some inmate records can be viewed and produced by computer at DOC's Central Office, many more inmate records are kept at the prison where the inmate is located.  Exhibit 1, Decl, ¶¶6-7. Of the twenty-four (24) prisons maintained by DOC,

---

[1] During his former tenure as Secretary, Defendant Little was also based at Central Office; he also currently resides within the Middle District.

there are only two (2) located in the Eastern District.  Exhibit 1, Decl, ¶6. Only one (1) of the

individually named Plaintiffs is domiciled in the Eastern District. Exhibit 1, Decl, ¶16(a-f).

For these reasons, the Middle District is the more appropriate venue for this action.

### 3. Claims Arose In Middle District; Weighs In Favor of Transfer to Middle District

It is not apparent from Plaintiffs' Complaint how any alleged violations occurred in the

Eastern District.  In this case, Plaintiffs allege that venue is proper in the Eastern District pursuant

to 28 U.S.C. 1391 (b)(2) because, a "substantial part of the events and omissions giving rise to the

claims occurred at SCI Phoenix, which is in the Eastern District of Pennsylvania." Complaint, ECF

No. 1, ¶17.  However, Plaintiffs then proceed to allege in their Complaint that:

> Defendants Harry and Little were "responsible for the management and operation of the entire adult corrections system in the Commonwealth and for protecting the constitutional and statutory rights of all individuals in the custody of the DOC, including those held in solitary confinement units. Additionally, [Defendants] determines rules, regulations, and policy regarding management, personnel, and the overall operation of the DOC, including all solitary confinement units."

Complaint, ECF No. 1, ¶¶24-25.

> Defendant Michael Wenerowicz authorized or acquiesced in the unconstitutional policies of holding incarcerated individuals in solitary confinement as described herein and also has    the authority to determine if and when individuals on the RRL are released from solitary confinement.

*Id.* at ¶26.

> Defendant Lucas Malishchak is responsible for overseeing treatment of mental health patients in DOC custody, including the provision of services and accomodations for mental health patients subject to the disciplinary system and the conditions of solitary confinement described in this Complaint.
> Defendant

*Id.* at ¶27.

20

The above-named Defendants all work at the DOC's Central office.  Exhibit 1, Dec., ¶13(a-d).  The DOC's Central Office is located at 1920 Technology Parkway Mechanicsburg, PA 17050, in Cumberland County. Exhibit 1, Dec., ¶3.  Plaintiffs' claims are all directly pointed at the policy decisions regarding Security Level 5 housing at DOC prisons.  Complaint, ECF No. 1, ¶2.  All decisions about DOC policy, including for Security Level 5 housing, are made at DOC Central Office.  Exhibit 1, Dec., ¶4.

Even Plaintiff's claims that a "substantial part of the events and omissions" occurred at a prison in the Eastern District, is implausible.  The DOC operates twenty-four (24) institutions across the Commonwealth with a total population of 37,913 inmates. Exhibit 1, Dec., ¶5.[2]  ***Only two (2) institutions of the twenty-four (24)*** are located in the Eastern District—namely, SCI-Chester and SCI-Phoenix. Exhibit 1, Dec., ¶6.   Within the 24 DOC prisons across the Commonwealth, DOC maintains 23 Restricted Housing Units, which fall under the Security Level 5 status, and currently housing 1,495 inmates. Exhibit 1, Dec., ¶8.  Of the 1,495 inmates placed in Restricted Housing Units at one of the DOC facilities across the Commonwealth, ***only*** 153[3] of those inmates are housed in a facility in the Eastern District; ***the remaining 1,342 inmates are outside*** of the Eastern District.   Exhibit 1, Dec., ¶9. Within the 24 prisons across the Commonwealth, DOC maintains 25 Specialty Units, which fall under the Security Level 5 status, currently housing 371 inmates.  Exhibit 1, Dec., ¶10.  Of the 371 inmates placed in Specialty Units at one of the DOC facilities across the Commonwealth, ***only*** 82[4] of those inmates are housed in a facility in the Eastern District; ***the remaining 289 inmates are outside*** of the Eastern District

---

[2] *See* Pennsylvania Department of Corrections Monthly Population Reports:
https://www.cor.pa.gov/About%20Us/Statistics/Pages/Monthly-Population-Reports.aspx
[3] This figure was provided on May 5, 2024.
[4] This figure was provided on May 5, 2024.

Exhibit 1, Dec., ¶11.  Plaintiffs' own Complaint identifies only one Plaintiff who resides in the Eastern District.

It is not apparent from Plaintiffs' Complaint how any alleged violation occurred in the Eastern District.  The Complaint alleges a variety of constitutional claims; each of those claims allegedly arose out of the actions or inactions of the Individual Defendants, in their roles as policy-makers for the Department of Corrections.   Individual Defendants are all deliberating upon, creating and instituting the policies that Plaintiffs now allege create violations of constitutional rights, at DOC's Central Office. Exhibit 1, Dec., ¶4.

For these reasons, the Middle District is the more appropriate venue for this action.

4. **The Convenience of the Parties, Location of Books and Records, and Practical Considerations Weigh in Favor of Transfer to Middle District**

These factors require the court to consider the respective burdens on the parties "as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Defendants all work in the Middle District. Exhibit 1, Decl, ¶13(a-d).  All but one Defendant lives in the Middle District. *Id.*  Although some inmate records can be viewed and produced by computer at DOC's Central Office, in the Middle District, many more inmate records are kept at the prison where the inmate is located, 22 of 24 of which are outside of the Eastern District.  Exhibit 1, Decl, ¶¶6-7.  DOC's Central Office, in the Middle District, provides the workspace for all executive-level decision makers and is the site at which all policy records are maintained. Exhibit 1, Decl, ¶4.

Discovery weighs in favor of transfer to Middle District because:

- All Defendants' depositions will be conducted in the Middle District. Exhibit 1, Decl, ¶13(a-d);

- All documents needed for the prosecution and defense of this matter are maintained at Central Office, in the Middle District, and any prison-specific records are maintained almost exclusively outside of the Eastern District, Exhibit 1, Decl, ¶¶6-7;

- The majority of witnesses or DOC personnel are outside of the Eastern District Exhibit 1, Decl, ¶¶6-7;

- At the time of trial, all Defendants, Exhibit 1, Decl, ¶13(a-d), likely most witnesses and most DOC personnel, Exhibit 1, Decl, ¶¶6-7, will be required to incur hotel and travel expense because they are domiciled outside of the Eastern District; and, lastly

- At the time of trial, or during discovery, should the Court need to inspect or observe any housing units identified in Plaintiffs' Complaint, the overwhelming majority of DOC prisons, twenty-two (22) of the twenty-four (24), are outside of the Eastern District.  Exhibit 1, Decl, ¶¶6-7.

The convenience to the parties will only be inhibited by proceeding in the Eastern District for all of the reasons stated above, and, therefore, the Middle District is the more appropriate venue for this action.

5.  **Local Interests Weigh In Favor of Transfer to Middle District**

This factor requires the Court to examine "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. Here, the majority of all individually named inmates, and all potential class members, are incarcerated outside of the Eastern District at all relevant times. Exhibit 1, Decl, ¶¶6, 16(a-f).  All individual Defendants work in the Middle District and all but one individual Defendant lives in the Middle District.  Exhibit 1, Decl, ¶13(a-d); .  The conduct at issue occurred almost exclusively outside of the Eastern District, and implicates policies created

in the Middle District.   Exhibit 1, Decl, ¶¶3-4.   The Middle District has a strong interest in providing a forum for resolution of disputes arising there. *Chruby v. Bearjar,* CIVIL ACTION NO. 3:17-cv-01631, 2018 WL 4051705, *13 (M.D.Pa.Aug.24,2018); *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 442, 448 (E.D. Pa. 1999).

Accordingly, this factor weighs strongly in favor of transfer.  *Id.*

Here, where the majority of *Jumara* factors weigh in favor of Defendants, there is a strong interest of justice for the matter to be transferred to the Middle District. *See Jumara*, 55 F.3d at 879-80.

### B.   Plaintiffs' Class Claims Cannot Proceed For Plaintiffs' Failure to Comply With Rule 23(a); 23(b); and Failure to Allege Class Ascertainability

#### 1.   Plaintiffs Lack of Ascertainability Renders Class Action Inappropriate

In considering whether to certify a class, a court must perform a two-pronged "rigorous analysis" to determine whether ascertainability and Rule 23(b)(3)'s requirements are satisfied. *Kelly v. Real Page, Inc.,* 47 F.4th 202, 222 (3d. Cir. 2022) (citing *In re Hydrogen Peroxide*, 552 F.3d at 309 (citation omitted)). In determining whether the ascertainability requirement is satisfied, it must determine that the plaintiff has (1) "defined [the class] with reference to objective criteria," and (2) identified a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (citing *Byrd*, 784 F.3d at 163).

"If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."  *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 593–94 (3d Cir.2012).  Ascertainability must be established "so that it will be clear later on whose rights are merged into the judgment," as otherwise, "satellite litigation will be invited over who was in the class in the first place." *Id.*   Thus, testing a putative class action for

ascertainability "serves several important objectives:" (1) it eliminates administrative burdens that would run counter to the intended efficiency of class actions in general; (2) it serves to protect absent class members by ensuring that "the best notice practicable" can be provided to class members; and (3) it protects defendants by clearly identifying those who will be bound by the final judgment. *McPeak v. S-L Distrbution, Co., Inc.,* Civil No. 12–348 (RBK/KMW), 2014 WL 4388562, *10 (D.N.J. Sept 5. 2014).

"Although some evidence used to satisfy ascertainability…will identify class members at the certification stage, ascertainability only requires the plaintiff to show that class members *can be identified.*" *Carrera v Bayer Corp.,* 727 F.3d 300, 308 n. 2 (emphasis added). However, a party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements. *Id.* at 306. Nor may a party "merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Id.* at 306, 307, 311. Rather, ***plaintiffs must provide a proper class definition,*** pursuant to Fed.R.Civ.P. 23(c)(1)(B)(emphasis added). *Byrd,* 784 F.3d at 163. The class must be "***defined with reference to objective criteria***" and some assurance that there can be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition," in order for the court to rigorously analyze the explicit Rule 23(a) and (b) certification requirements. *Id.* (emphasis added) (citing *Hayes,* 725 F.3d at 355. A class definition that depends on subjective criteria, such as class members' state of mind, will fail for lack of definiteness." 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:3 (6th ed. 2023).

When combined with the separate class-definition requirement pursuant to Rule 23(c)(1)(B), requiring a class-certification order to contain "a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified," *Wachtel*, 453 F.3d at 187–

88, district courts require the necessary tools to determine whether "a party seeking to maintain a class action" can " 'affirmatively demonstrate his compliance' with Rule 23." *See Comcast,* 569 U.S.27, 33 (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).

Plaintiffs propose in their Complaint that there are "common questions of law and fact affecting members of the Class," whom Plaintiffs define as those "incarcerated individuals in long-term, often indefinite, solitary confinement…classified as Security Level 5 (SL5)." Complaint, ECF 1, ¶2. Plaintiffs then define "solitary confinement" as follows:

> [I]mprisonment under conditions of severely restricted environmental, social, and occupational stimulation. Solitary confinement is defined less by the purpose for which it is imposed, or the exact amount of time during which prisoners are confined to their cells, than by the degree to which they are deprived of normal, direct, meaningful social contact and denied access to positive environmental stimulation, programming, and activity. Even a regime incorporating a few daily hours of "out-of-cell" time during which a prisoner is nonetheless still prohibited from engaging in normal meaningful social contact still constitutes a painful and damaging form of solitary confinement.

Complaint, ECF 1, ¶4.

Plaintiffs' definition of "solitary confinement" has been carefully sanitized of objective terms, from which Defendants, or this Court, could make even a distinction between an inmate confined in "solitary confinement," and an inmate confined in general population. Plaintiffs fail to define "normal, direct meaningful social contact," "positive environmental stimulation," "programming," "activity," and "out of cell time." Complaint, ECF 1, ¶4. Plaintiffs admit that they lack objectivity in determining the term "solitary confinement," conceding that " solitary confinement is defined less by the purpose for which it is imposed, or the exact amount of time during which prisoners are confined to their cells." Complaint, ECF 1, ¶4. Without any objective criteria, the Court would be required to conduct a series of "mini-trials" for a fact-finder to

determine whether each Plaintiffs' claims qualify as "solitary confinement," making a class action inappropriate. *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 593–94 (3d Cir.2012).

Plaintiffs cannot now, or ever, meet Rule 23's requirement because of their amorphous, subjective definition of "solitary confinement." A prospective class definition that relies so fundamentally on this type of subjective criteria is impermissible under rule 23. While a prospective class need not be "so ascertainable that every potential member can be identified at the commencement of the action," it must -- at least theoretically "be able to be determined based on objective criteria." 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1760 (4th ed. 2023). According to the proposed class definition here, with subjective terms as the basis for claims of "solitary confinement" laid bare, the Court lacks any definition of class members based on objective criteria, by which the Court could determine the group of individuals who belong in the proposed class. Instead, Plaintiffs have inextricably intertwined identification of class members with liability determinations, such that the putative class members cannot be ascertained without extensive and individualized fact-finding mini-trials. *Van Buren v. Abraxas Youth and Family Services,* 2:22-CV-00499-CCW, 2024 WL 510084, *3 (W.D.Pa. Feb.9,2024).

Furthermore, without being able to "define the class and the class claims" the Court will not be able to comply with the Third Circuit's holding that its certification order include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis. *Wachtel,* 453 F.3d at 187-88.

Conflating and confusing class identification further, Plaintiffs acknowledge that the Security Level 5 (SL5) unit, which they claim to be the unit upon which all inmates are confined to "solitary confinement," contains various units, only two of which they identify in their

Complaint.   Complaint, ECF 1, ¶2.   Under the SL5 umbrella, the Department of Corrections maintains the following units: Intensive Management Units (IMU); Restricted Housing Units (RHU); Behavioral Management Units (BMU), that includes both "C" and "D" roster inmates; Diversionary Treatment Units (DTU), for "D" roster inmates and some "C" roster inmates; and Secure Residential Treatment Units (SRTU), for "D" roster inmates and some "C" roster inmates. Inmates are placed in each of these units for varying reasons.   Furthermore, each of these units has varying amounts of: out-of-cell-time; social interaction; programming; opportunities for additional privileges; and pathways back to general population.   No two programs are alike.   More salient, though, there is no differentiation in Plaintiffs' Complaint to qualify whether any fit within Plaintiffs' vague definition of "solitary confinement."

### 2.   Plaintiffs' Failure to Meet Requirements of Rule 23(a) Renders Class Action Inappropriate

Plaintiffs will similarly not be able to satisfy the threshold requirements for class certification pursuant to Rule 23(a).   Federal Rule of Civil Procedure 23(a) sets forth the following prerequisites to class certification: One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of their proposed class.

Plaintiffs include the following five subclasses under the main class of inmates subjected to "solitary confinement":

- Mental Health Class - "All individuals who are currently or in the future will be housed in an SL5 unit in the Pennsylvania Department and who ever had a "C" or "D" designation on the DOC's MH/ID Roster."  Complaint, ECF 1, ¶369;

- Prolonged Solitary Confinement Class - All individuals who are currently or in the future will be housed in any SL5 unit in the Pennsylvania Department of Corrections and who have spent three years or longer, whether cumulative or continuous, in an SL5 unit." Complaint, ECF 1, ¶370;

- Disability Class - "All individuals who are currently or in the future will be housed in an SL5 unit in the Pennsylvania Department of Corrections and have a mental health condition that substantially limits one or more major life activities." Complaint, ECF 1, ¶371;

- RRL Class – "All individuals who are or in the future will be on the Pennsylvania Department of Corrections' Restricted Release List (RRL)." Complaint, ECF 1, ¶372;

For the individual class representatives, Plaintiff allege the following:

- All Plaintiffs are within the "Mental Health Class," Complaint, ECF 1, ¶369;

- All Plaintiffs are within the "Prolonged Solitary Confinement Class," Complaint, ECF 1, ¶370

- All Plaintiffs are within the "Disability Class," Complaint, ECF 1, ¶371;

- Hammond and Walker are within the "RRL Class," Complaint, ECF 1, ¶372

- Hammond and Walker are within the "IMU Class," Complaint, ECF 1, ¶;373

- All Plaintiffs are within the "Mental Health Damages Class," Complaint, ECF 1, ¶374;

- All Plaintiffs are within the "Prolonged Solitary Confinement Damages Class," Complaint, ECF 1, ¶375.

Plaintiffs allege the following infractions and requested relief for the following subclasses:

- Plaintiffs allege that the "Mental Health Class" and "Prolonged Solitary Confinement" incurred violations of the Eighth Amendment and request enjoinment from placement in "solitary confinement," Complaint, ECF 1, Counts I and II;

- Plaintiffs allege that the "Mental Health Damages Class" and "Prolonged Solitary Confinement Damages Class" incurred violations of the Eight Amendment and ADA/RA.  Plaintiffs request compensatory, punitive, and nominal damages for violations of the Eighth Amendment, and compensatory and nominal damages for violations of the ADA/RA, Complaint, ECF 1, Counts II, III and IV;

- Plaintiffs allege that the "Disability Class" incurred violations of the ADA/RA and seek to enjoin them from discrimination Complaint, ECF 1, Count IV;

- Plaintiffs allege that the "RRL Class" and "IMU Class" incurred violations of the Fourteenth Amendment and seek to enjoin them from "solitary confinement" without due process, Complaint, ECF 1, Counts V and VI.

a.  **Plaintiffs Fail To Allege Common Issues of Law or Fact Among Proposed Class**

Plaintiffs have not alleged, and will not be able to establish, now or in the future, the second element for Rule 23(a); that is, existence of common issues of law or fact among their proposed class, or subclasses.  Rule 23(a)(2).  To satisfy commonality, each class member's claim "must depend upon a common contention" such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Generally, this element "requires that all class members 'have suffered the same injury.' This does not mean that a violation of the same provision of law applies to all class members, rather the claims must be productively litigated all at once through a common contention—'for example, the assertion of discriminatory bias on the part of the same supervisor.'" *Molina v. Pennsylvania Dep't of Corr.*, No. 4:21-CV-00038, 2021 WL 4450016, at *2 (M.D. Pa. June 8, 2021), *report and recommendation adopted sub nom.* MIGUEL MOLINA, et al., Plaintiffs, v. K. KAUFFMAN, et al., Defendants., No. 4:21-CV-00038, 2021 WL 4439486 (M.D. Pa. Sept. 28, 2021) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Plaintiffs' purported "common questions of law and fact affecting members of the Class," include the following:

- Whether Defendants' policies and practices of permitting the placement of Mental Health Class Members in solitary confinement violate the Eighth Amendment;

- Whether Defendants' failure to train mental health staff in recognizing and diagnosing the symptoms of trauma caused or exacerbated by solitary confinement and Defendants' failure to train mental health staff in prescribing clinical interventions in regard to these symptoms, constitute deliberate indifference and/or

31

a failure to provide a reasonable accommodation to the mental health care needs of
Mental Health and Disability Class Members;

- Whether Defendants' policies and practices of permitting the placement of
  Disability Class Members in solitary confinement housing units violate the
  Americans with Disabilities Act and Rehabilitation Act;

- Whether the DOC denies Disability Class Members the benefits of the programs,
  services, or activities or otherwise discriminates against by reason of their
  disabilities;

- Whether Defendants' policies and practices of permitting long-term isolation of the
  Prolonged Solitary Confinement Class violate the Eighth Amendment;

- Whether Defendants' policies and practices regarding placement on the RRL and
  subsequent housing in solitary confinement violate the Fourteenth Amendment
  procedural due process rights of members of the RRL Class;

- Whether Defendants' policies and practices regarding placement in the IMU for a
  minimum of three years without the opportunity to challenge their placement in the
  unit or end their solitary confinement once in the unit violate the Fourteenth
  Amendment procedural due process rights of members of the IMU Class.

Complaint, ¶389 (a-g).

Based upon these "common questions of law and fact" the common thread by which
Plaintiffs identify its class is placement in what they allege to be "solitary confinement," which
has never been objectively defined in the Complaint.  In fact, inmates placed in SL5 housing units,
including the named Plaintiffs, have unique circumstances surrounding their placements, none of
whom are placed in one type of unit or one type of program. The SL5 units, including the:

Restricted Housing Units (RHU); Intensive Management Units (IMU), Behavioral Management Units (BMU), Diversionary Treatment Units (DTU); and Secure Residential Treatment Units (SRTU),  provide different frameworks for procedure, placement, retention, removal, prison location, reintegration to general population, time for completion, programming, out-of-cell time, opportunities for increased privilege, and programming goals.

Even within Plaintiffs' proposed subclasses, Plaintiffs cannot now, or in the future, identify commonality.  Plaintiff alleges classes of inmates who have been placed on the Intensive Management Unit or the Restricted Release List, for alleged violations of the Fourteenth Amendment.  ECF No. 1, ¶¶373, 430.  However, procedural due process claims alleged for those subclasses require individualized determinations.  *Harris v. Little,* No. 22-cv-3715, 2024 WL 915562, *3 (E.D.Pa. March 4, 2024).  The factual inquires that accompany due process challenges to RRL or IMU placement include all of the following:

- Did each prisoner *actually receive* a periodic review? *Id.; see Bramble v. Wetzel*, No. 4:20-CV-2394, 2022 WL 55021 at *10 (M.D. Pa. Jan. 5, 2022).

- Did the prison comply with a policy to, for example, provide written notice of the reason for placing that prisoner in administrative custody? *Id.; see Reaves v. Rossman*, No. 3:21-CV-01282, 2022 WL 18539772 at *6-7 (M.D. Pa. July 1, 2022), *report and recommendation adopted*, No. 3:21-CV-1282, 2023 WL 1348508 (M.D. Pa. Jan. 31, 2023).

- Did the prison officials prevent the prisoner from appealing his RRL placement despite a policy permitting such? *Id.; see Tucker v. Wetzel*, No. 1:22-CV-631, 2023 WL 322442 (M.D. Pa. Jan. 19, 2023).

These are all viable claims when brought as individuals. *Id.* However, the problem with bringing these claims as a class is that the answers to these questions are fact and individual dependent and what is true for one inmate may not be true for another inmate. *Id*.

The same analysis applies to each of Plaintiffs' subclasses, and certainly to the class as a whole. Each claim requires answers to questions that are fact dependent because of the amount of policies, units, facilities, decision-makers, programming, and progression toward general population, involved in the volume and scope of claims Plaintiffs seek to address under the subjective definition of "solitary confinement." Thus, commonality cannot be met because these variable issues differ from prisoner to prisoner and cannot be resolved in one fell swoop. *Id. citing Dukes*, 564 U.S. at 350.

Plaintiffs have not established that there are common issues of law and fact among their proposed class and, as such, their pleading cannot proceed as a class action because they cannot now, or in the future, show that they will be able to certify their class.

### 3. Plaintiffs' Failure to Meet Requirements of Rule 23(b) Renders Class Action Inappropriate

#### a. Plaintiffs Fail to Meet 23(b)(3) Predominance Requirement

Rule 23(b)(3) requires plaintiffs to demonstrate that (1) the questions of law or fact common to all members of the class predominate over questions pertaining to individual members ("predominance"); and (2) that a class action is superior to other available methods of litigation ("superiority"). Fed. R. Civ. P. 23(b)(3)

"The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance element of Rule 23(b)(3) is closely related to the commonality element of Rule 23(a). *Wragg v. Ortiz,* 462 F.Supp.3d 476, 517 (D.N.J. 2020). "Whereas 'Rule 23(a)(2)'s

commonality element requires that the proposed class members share at least one question of fact or law in common with each other,' the Rule 23(b)(3) predominance element 'requires that common issues predominate over issues affecting only individual class members.' " *Id.* (citing *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 266 (3d Cir. 2009)).   Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding.   *Windsor*, 521 U.S. at 623-24.   As explained by the Third Circuit, "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 298 (3d Cir. 2011).

In *Wragg*, the Third Circuit found that the implementation of the allegedly harmful prison procedures were not common to all class members because inmates were evaluated and treated differently.   In the case at hand, Plaintiffs similarly cannot assert that they have been subject to the same conduct of Defendants in a case in which Plaintiffs have all been placed at different facilities, in different units, for different reasons, different durations, different conditions, different requirements, and different paths back to general population.   In a recent case, the U.S. Supreme Court was presented with a similar class certification question by a proposed class of individuals exposed to different asbestos-containing products, and determined that plaintiffs could not meet the predominance element, holding:

> Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma.... Each has a different history of cigarette smoking, a factor that complicates the causation inquiry.
> "The [exposure-only] plaintiffs especially share little in common, either with each other or with the presently injured class members. It is unclear whether they will contract asbestos-related disease and, if so, what disease each will suffer. They will

also incur different medical expenses because their monitoring and treatment will depend on singular circumstances and individual medical histories." *Id.,* at 626. Differences in state law, the Court of Appeals observed, compound these disparities. See *id.,* at 627 (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 823 (1985).

*Windsor,* 521 U.S. 624.

Similarly here, Plaintiffs cannot satisfy the Rule 23(b)(3) predominance standard. *Windsor,* 521 U.S. 624. There are too many questions peculiar to the categories of class members, and the individuals within each category, including: duration; facility; unit; process; harm; path to general population; programming; out-of-cell time; and officials responsible for decision-making, for Plaintiffs to allege now, or ever, that they will satisfy the predominance requirement pursuant to Rule 23(b)(3).

Plaintiffs have also failed to identify Class Representatives that capture the interests of their subclasses. Plaintiffs do not identify any individual Plaintiff who falls under the "Prolonged Solitary Confinement Damages" subclass, who does not also fall under the "Mental Health Damages" class. Specifically, there is no individual Plaintiff who falls under "A" or "B" mental health placement for Plaintiffs' "Prolonged Solitary Confinement Damages" subclass; rather, Plaintiffs have only identified individuals who are under the "C" or "D" mental health placement and, therefore, are representative of the "Mental Health Damages" class. Yet, Plaintiff's "Mental Health Class Damages" and "Prolonged Solitary Confinement Damages Class" have identical claims and seek identical monetary relief. Therefore, if Plaintiffs are successful, there is the potential that those in the "Mental Health Damages" subclass, who also fall in the "Prolonged Solitary Confinement Damages" subclass, would recover the full value of the claim *twice.* Plaintiffs have not addressed how damages could be properly calculated for the two subclasses to avoid double recovery.

In sum, Plaintiffs have failed to satisfy the predominance requirement at this juncture because they are unable to demonstrate that the alleged injury in this case is "capable of proof at trial through evidence that [was] common to the class rather than individual to its members," and that damages be "measurable on a class-wide basis through use of a common methodology." *Comcast Corp.,* 569 U.S. at 30.

### b. Plaintiffs Fail to Meet 23(b)(2) Cohesiveness Requirement

The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2).  Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. However, a showing of cohesiveness of class claims is required. *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir.1998).  An injunctive relief class must also be properly defined.  *Abraham v. Owcen Loan Servicing, LLC*, 321 F.R.D. 125, 173 (E.D.Pa. 2017).

"A properly defined 'class' is one that: (1) meets the requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2) and [the Third Circuit's] guidance in Barnes, 161 F.3d at 143; and (3) is capable of the type of description by a 'readily discernible, clear, and precise statement of the parameters defining the class,' as required by Rule 23(c)(l)(B) and [the Third Circuit's] discussion in *Wachtel [ex rel. Jesse v. Guardian Life Ins. Co. of Am.,* 453 F.3d 179, 187 (3d Cir. 2006) ]." *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015). The existence of disparate factual circumstances of class members will prevent a class from being sufficiently cohesive for Rule 23(b)(2) certification. *Gates v. Rohm & Haas Co.,* 655 F.3d 255, 264 (3d Cir. 2011) (citing *Carter v. Butz*, 479 F.2d 1084, 1089 (3d Cir. 1973)).

The cohesiveness requirement protects two interests. The first is protecting unnamed class members, who "are bound by the action without the opportunity to withdraw and may be prejudiced by a negative judgment in the class action." *Barnes v American Tobacco*, 161 F.3d 127, 143 (3d Cir. 1998). The cohesiveness requirement protects this interest by ensuring that "significant individual issues do not pervade the entire action because it would be unjust to bind absent class members to a negative decision where the class representatives' claims present different individual issues than the claims of the absent members." *Id*. (citations and quotation marks omitted). The second interest is to ensure that the litigation remains manageable. If a class is not sufficiently cohesive, "the suit could become unmanageable and little value would be gained in proceeding as a class action if significant individual issues were to arise consistently." *Id*. (quotation marks, citations, and alterations omitted).

In order to satisfy the cohesiveness test, the Court must find that the "class's claims are common ones and that adjudication of the case will not devolve into consideration of myriad individual issues." *Abraham,* 321 F.R.D. at 173 (citing Newberg on Class Actions § 4:34).  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. *Id.*  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."  *Id.* (citing *Dukes*, 564 U.S. at 360). The Third Circuit has held that any "'disparate factual circumstances of class members' may prevent a class from being cohesive." *Id.* (citing *Gates*, 655 F.3d at 264). The Court maintains the discretion to deny certification in the presence of disparate factual circumstances. *Id.* (citing *Geraghty v. U.S. Parole Comm'n,* 719 F.2d 1199, 1206 (3d Cir. 1983). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or

declared unlawful only as to all of the class members or as to none of them.' " *Id.* (citing *Dukes,* 564 U.S. at 360).

Third Circuit Court of Appeals cases have made it clear that the cohesiveness inquiry is not without teeth. *In re Processed Egg Products Antitrust Litigation,* 321 F.R.D. 555, 559 (E.D.Pa. 2017); *See, e.g., Barnes*, 161 F.3d at 143 ("[A] 'court should be more hesitant in accepting a (b)(2) suit which contains significant individual issues than it should under subsection 23(b)(3)' ") (quoting *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 628 (E.D. Pa. 1976)).

Plaintiffs' request for injunctive relief is far too individualized to satisfy Rule 23(b)(2)'s standards because Plaintiffs do not seek a single injunction that is applicable to all putative class members; rather they seek a common generalized form of injunction, but one that must be applied separately to each putative class member.  To prove their injunction claims, Plaintiffs would not need to show past harm (as they would have needed to show to make out their claims for monetary damages), but are required to demonstrate at least a threat of future injury and to do so through common proof.  Plaintiffs request that the Court enjoins Defendants from placing or retaining members of its "Mental Health Class," and "Prolonged Solitary Confinement Class," from "solitary confinement;" and, further, the "RRL Class" and "IMU Class" from "solitary confinement" without due process.  Complaint, ECF, Requested Relief, ¶D-G.  However, Plaintiffs fail to define "solitary confinement" with any objective criteria, and fail to address the multitude of units under the SL5 umbrella, and how generalized injunctive relief would cohesively address common issues, where common issues were similarly not objectively identified.  Each of the units has varying: facilities; amounts of out-of-cell-time; social interaction; programming; opportunities for additional privileges; pathways back to general population; personnel and decision makers; and reasons for placement and retention.

Therefore, it is Plaintiffs same failure to allege common issues predominated over individual ones as to their proposed (b)(3) class, that Plaintiffs have similarly failed to allege that their proposed (b)(2) class is cohesive.

For Plaintiffs' failure to meet the requirements of Federal Rule 23(a), Federal Rule 23(b) and failure to allege claims of class ascertainability, Defendants respectfully request that the Court deny Plaintiffs' class certification, pursuant to Federal Rule 12(f), for Plaintiffs' failures, that cannot and will not be rectified, regardless of the amount of discovery conducted by Plaintiffs.

### C.  Partial Dismissal For Failure To State A Claim

#### 1.  Plaintiffs' Claims Regarding D-Roster Inmates In Putative Mental Health Damages Class Should Be Dismissed For Failure To   Present Claim That Conditions Of Confinement Are Unconstitutional

Plaintiffs' definition of the "Mental Health Class" and "Mental Health Damages Class" broadly includes inmates "who have ever had a 'C' or 'D' designation on the DOC's MH/ID Roster." Complaint, ECF 1, ¶¶ 369, 374. Insofar as Plaintiffs seek to include D-Roster inmates in these respective classes, their inclusion is improper as Plaintiffs have not adequately plead the existence of a violation as to that specific subset of prisoners.

Current DOC policy and practice require that D-Roster inmates housed in a disciplinary setting receive a minimum of 20 hours out-of-cell per week[5]. Complaint, ECF 1, ¶ 163. Plaintiffs do not challenge that particular policy provision, nor do they suggest that the provision fails to meet constitutional standards. Instead, Plaintiffs contend that some unidentified number of D-Roster inmates improperly had their roster designation modified, and subsequently migrated to the C-Roster where they would receive less-frequent psychological services and fewer hours out-of-

---

[5] PA DOC 13.8.1
https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/13.08.01%20Access%20to%20Mental%20Health%20Care.pdf

cell. Complaint, ECF 1, ¶¶ 165-166. Accordingly, the allegations applied to the "Mental Health Class" and "Mental Health Damages Class" necessarily only include C-Roster prisoners, despite Plaintiffs' attempts to shoehorn the D-Roster cohort of inmates into those respective classes. The flaw in Plaintiffs' proposed construction of these two classes is self-evident: D-Roster inmates are only proper members of these respective classes when they are actually C-Roster inmates.

Any argument that the conditions of confinement experienced by D-Roster inmates violates the constitution is similarly unavailing. The entirety of a D-Roster inmate's experience in a disciplinary setting – including programming, socialization, diversion, recreation and treatment – was the subject of a suit and negotiated settlement from which the DOC has not deviated. Indeed, some of the organizations involved in the current litigation were parties to that prior suit and are well aware of these terms. *See Disability Rights Network of Pennsylvania v. John Wetzel*, No. 3:13-CV-00635 (M.D. Pa.) at Doc. 59.[6]

Accordingly, the inclusion of D-Roster inmates in the dual Mental Health Classes is improper, and those Plaintiffs meeting that designation should be dismissed from the case.

---

[6] This Court may take judicial notice of documents which are matters that are not those subject to reasonable dispute. *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) , court-filed documents; *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 755 n2 (E.D. Pa. 2003) https://www.disabilityrightspa.org/newsroom/landmark-legal-settlement-to-improve-conditions-for-state-inmates-with-serious-mental-illness-in-pennsylvania/; https://www.disabilityrightspa.org/spotlights/drp-completes-monitoring-wetzel-settlement-ensuring-mental-health-treatment-end-solitary-confinement-pa-prisoners-mental-illness/; https://www.justice.gov/opa/pr/justice-department-closes-investigation-after-pennsylvania-department-corrections-takes

2.  **Individual Plaintiffs And Prospective "Mental Health Class" and "Mental Health Damage Class" Members Should Be Precluded From Relief     In Count II Because Of Duplicity With Count I; "Prolonged Solitary Confinement Class" and "Prolonged Solitary Confinement    Damages" Class Should Be Dismissed For Lack of Representation**

In Count II of the Complaint, Plaintiffs contend that Defendants have violated the Eighth Amendment prohibition against cruel and unusual punishment through the use of prolonged solitary confinement. Complaint, ECF 1, pg. 54. This claim is specifically attributed to the Individual Plaintiffs, the prospective "Prolonged Solitary Confinement Class," and the prospective "Prolonged Solitary Confinement Damages Class." *Id*. Likewise, in Count I of the Complaint, Plaintiffs contend that the Defendants have violated the Eighth Amendment prohibition against cruel and unusual punishment through the use of prolonged solitary confinement. Complaint, ECF 1, pg. 52. This claim is specifically attributed to the Individual Plaintiffs, the prospective "Mental Health Class" and "Mental Health Damages Class." *Id*. The paragraphs that follow each Count are identical. *Id*.

The claim of Count II – and the corresponding reasons it should be dismissed — requires an acute understanding of the Department's mental health roster. Each inmate incarcerated by the Department is assigned a letter designation that reflects the acuity of their mental health condition. Complaint, ECF 1, ¶¶ 158-162. Prisoners on the A-Roster have no history of mental health issues and consume no mental health services. Prisoners on the B-Roster have a history of mental health treatment, but are not current consumers of mental health services. Prisoners on the C-Roster are current consumers of mental health services and may be prescribed psychotropic medications, but are not diagnosed with a "serious mental illness" as defined by Department policy. Prisoners on the D-Roster have been determined to suffer from a "serious mental illness," or otherwise suffer

from a "credible functional impairment;" they may have also been sentenced as "guilty but mentally ill" by a criminal court. *Id*.

Preliminarily, Count II should be dismissed because all parties to whom this claim is attributed are more aptly included as parties to Count I, which is an Eighth Amendment claim as it applies to the Individual Plaintiffs, "Mental Health Class," and "Mental Health Damages Class." Complaint, ECF 1, p. 52. Counts I and II are virtually identical and are supported with verbatim averments. *Id*., at pp. 52-55, ¶¶ 394-405. Plaintiffs may argue that the difference between the two claims is obvious – Count I addresses individuals with mental illness in solitary confinement, while Count II addresses prolonged solitary confinement; however, –the identical support for both claims, as well as the overlapping parties belies any such argument and the duplicative nature is evident. Importantly, the injury for the individual would not change from one count to the next.

Count I, like Count II, is attributed to the named Individual Plaintiffs, all of whom are carried on the C-Roster. *Id*., at ¶¶ 235, 256, 288, 302, 326, 346. Plaintiffs' C-Roster designation places them squarely on the DOC's mental health roster. As such, the named Plaintiffs are proper parties for Count I, inasmuch as Count I explicitly addresses the housing of individuals with mental illness in solitary confinement. But the named Plaintiffs cannot also be proper parties for Count II, which utilizes an identical factual basis for support. While length of time in an SL5 is not critical to the "Mental Health Classes," the injury and damages sought will undoubtedly relate to the individual's known mental health diagnosis and the time he or she spent in an SL5. A plaintiff cannot collect for the same injury twice. *Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996); *Lewis v. Kendrick*, 944 F.2d 949 (1st Cir. 1991); *Gilmere v. City of Atlanta*, 864 F.2d 734 (11th Cir.), cert denied, 493 US 817 (1989); *Clappier v. Flynn*, 605 F.2d 519 (10th Cir. 1979); *Stringer v. Dilger*, 313 F.2d 536 (10th Cir. 1963).

The same duplication of claims ring true for those prospective class members of the "Prolonged Solitary Confinement Class" and "Prolonged Solitary Confinement Damages Class." Without question, many individuals comprising the cohort of both classes will have a mental health roster designation of 'C' or 'D'. If that is the case, those individuals would be proper parties to Count I, but like the named Plaintiffs, they could not also be proper parties to Count II simultaneously. Therefore, prospective members, who have a mental health roster designation of 'C' or 'D,' and who also fit the "three year, cumulative or consecutive criteria in an SL5," should prohibited from recovery under Count I "Mental Health Class" and "Mental Health Damages Class" and from recovery under Count II "Prolonged Solitary Confinement Class" and "Prolonged Solitary Confinement Damages Class" so as to avoid double recovery.

Future members of the "Prolonged Solitary Confinement Class" and "Prolonged Confinement Damages Class" should be only for those inmates who do not have a mental health history within the DOC, meaning that they are given a mental health roster designation of 'A' or possibly 'B.' However, because all Individual Plaintiffs are C-Roster inmates, they cannot be representatives of the "Prolonged Solitary Confinement Class" and "Prolonged Solitary Confinement Damages Class."

Thus, Count II and the "Prolonged Solitary Class" and "Prolonged Solitary Damages Class" must be dismissed for failure to have a proper class representative. *See*, *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013)(It is axiomatic that the lead plaintiff must fit the class definition. … where the lead plaintiff does not fit the class definition, the class may not be certified.)

3. **ADA Claim Contained In Count III Should Be Dismissed Against Defendant Harry.**

At Count III, Plaintiffs assert an ADA claim against the DOC, as well as Secretary Harry in her official capacity. Complaint, ECF 1, p. 55.  A lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them.  *See Cuvo v. De Biasi*, 169 Fed. Appx. 688 (3d Cir. 2006).  Because Plaintiffs are suing DOC, the suit against Secretary Harry in her official capacity is redundant.  *Id.*  Thus, this Court should dismiss the ADA claim against Defendant Harry.  *See Michael F. Rogers v. Montgomery County*, 2020 WL 11563094 * 3 (E.D. Pa. February 20, 2020).

4. **Qualified Immunity As To Eighth Amendment Claims**

An application of qualified immunity as to Plaintiffs' Eighth Amendment claims are appropriate. By their stated terms, both of Plaintiffs' prospective damages classes (the "Prolonged Solitary Confinement Damages Class" and "Mental Health Damages Class," respectively) envision conditions upon the use of restrictive housing that have not been contemplated by the Third Circuit Court of Appeals. Those unique conditions and qualifications — which have not been tested in any previous qualified immunity analysis — do not formulate a clearly established right. The qualified immunity analysis is framed, in part, by Plaintiff's imprecise definition of "solitary confinement." With their definition, it is not sufficient to simply institute an out-of-cell metric that also ensures adequate social interaction; that social interaction must also meet an ethereal standard of "normal and meaningful."  Complaint, ECF 1, ¶¶ 4, 83.

The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*quoting al-Kidd*, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*; *see also Davenport v. Borough of Homestead*, 870

F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." *Reichle*, 566 U.S. at 664.

The Supreme Court has emphasized the importance of the qualified immunity defense for public officials, including the requirement that a plaintiff present authority clearly establishing the right at issue. *See Kisela v. Hughes*, 138 S.Ct. 1148, 1152-53 (2018); *District of Columbia v. Wesby*, 138 S.Ct. 577, 589-91 (2018). Both the Supreme Court and this Court have emphasized the importance of the clearly established authority requirement in the context of claims addressing the administration of prisons. *See Taylor v. Barke*s, 135 S.Ct. 2042, 2044-45 (2015) (no authority clearly established "a right to the proper implementation of adequate suicide prevention protocols" in a prison); *Michtavi v. Scism*, 808 F.3d 203, 207 (3d Cir. 2015) (applying *Taylor* and finding no clearly established authority holding that prison officials must treat certain medical conditions).

In recent years, the Third Circuit Court of Appeals has established branching paths for the analysis of qualified immunity when presented with an Eighth Amendment conditions of confinement claim rooted in excessive periods of restrictive housing. Those paths portray a theoretical division in the application of qualified immunity to an Eighth Amendment conditions claim: whether the prisoner plaintiff was sentenced to death, or whether the prisoner plaintiff served a non-execution sentence but suffered from a pre-existing serious mental illness. In the former context, the Third Circuit has found an application of qualified immunity to be appropriate; in the latter context it has generally not. *See Porter v. Pennsylvania Dep't of Corrections, et al*., 974 F.3d 431 (3d Cir. 2021); *see also Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017); *Clark v.*

*Coupe*, 55 F.4th 167 (3d Cir. 2022); *Johnson v. Pennsylvania Department of Corrections*, 846 Fed.Appx. 123 (3d Cir. 2021).

These two divergent analyses maintain one common, but crucial factor – a claim that the prisoner plaintiff was confined in harsh conditions for an excessive amount of time. The critical time component is central to the various holdings across this range of cases and discussed therein at length. Where no pre-existing mental health condition is alleged, the contours of an excessive time period confined in restrictive conditions is measured in decades. Accordingly, in *Porter*, the Third Circuit confronted a prisoner plaintiff who had remained confined in the capital unit in restrictive conditions for 33 years; and in *Johnson*, the Third Circuit analyzed an Eighth Amendment claim where the prisoner plaintiff alleged upwards of 20 years held in restrictive conditions.

Where serious pre-existing mental health condition are alleged, the contours of an excessive time period confined in restrictive conditions is measured in months. In *Clark*, the Third Circuit held that a seriously mentally ill inmate held in solitary confinement for 7 months stated a claim and denied defendant qualified immunity. *Clark v. Coupe*, 55 F.4th 167, 181 (3d Cir. 2022). The *Clark* Court went on to find that "the particular conduct at issues was prison officials keeping Clark in solitary confinement for 7 months despite knowing of his serious mental health illness. *Id*. In *Palakovic* the Third Circuit found that placing a seriously mentally ill inmate in solitary confinement for multiple "30-day stints" during a thirteen month period stated a claim under the Eighth Amendment. *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017).

Plaintiffs' prospective damages classes fail to meet any of the aforementioned metrics by which an application of qualified immunity could be denied. The damages classes do not necessarily implicate the existence of a pre-existing mental health condition, nor do they involve

the type of decades-long confinement that could overcome the lack of adequately plead mental health issues. By their own proposed definitions, the two damages' sub-classes seemingly expand upon the Third Circuit's qualified immunity decisions by including qualifiers not mentioned therein, and therefore not part of a clearly established analysis.

Plaintiffs prospective "Mental Health Damages Class" includes "all individuals housed in an SL5 unit…*at any time since March 4, 2022*, who have ever had a 'C' or 'D' [roster] designation…" (emphasis added) Complaint, ECF 1, ¶ 374. The impact of this proposed definition cannot be understated, because Plaintiffs do not restrict sub-class eligibility to any length of confinement in restrictive housing at all. By its terms, this definition could capture a cohort of individuals who had spent a single day in restrictive housing on or after March 4, 2022, and later been diagnosed with a mental illness to necessitate their placement on the mental health roster afterwards. None of the recent Third Circuit decisions came close to establishing such a stringent standard regarding the use of restrictive housing. *See Porter*, *Palakovic*, *Clark*, *Johnson*. It is not clearly established that a prisoner has a right to avoid restrictive housing for even a single day, if he later develops a mental health condition that qualifies him for placement on the mental health roster.

The "Prolonged Solitary Confinement Damages Class" is problematic in similar ways. The Class includes "all individuals who have spent *three years or longer, whether cumulative or continuous, in any SL5* unit in the DOC and have been housed in an SL5 unit at any time since March 4, 2022." (emphasis added) Complaint, ECF 1, ¶ 375. As outlined in an earlier argument, this Class is not restricted to inmates who have mental health issues. Again, inmates with mental health issues are covered by the "Mental Health Class" and the "Mental Health Damages Class." The "Prolonged Solitary Confinement Damages Class" captures a cohort of prisoners that have

spent "three years or longer" in restrictive conditions, whether the total period of time was "cumulative or continuous." Complaint, ECF 1, ¶¶ 370, 375. This term of years, combined with the continuous or cumulative qualification, represents a substantial deviation from those cases where the Third Circuit found an application of qualified immunity to be inappropriate. It is not clearly established — by *Porter*, *Palakovic*, *Clark*, *Johnson* or any other Third Circuit decision – that a right exists to avoid restrictive housing conditions for a period as short as three years on a cumulative or continuous basis. Plaintiffs' proposed standards are unworkable because too many essential questions remain unanswered. Such as, how deep into the past would a brief confinement in restrictive conditions remain actionable.  Such strained definitions suggest qualified immunity.

The combined effect of Plaintiffs' allegations, attributable to the various sub-classes, also warrants an application of qualified immunity. Without question, the proposed classes, as currently defined, will exhibit substantial overlap. The impact of that overlap is an expansive challenge to "solitary confinement" on behalf of neatly defined sub-classes, who are nonetheless comprised of individuals from unique backgrounds, serving different sentences, with wildly contrasting treatment needs and behavioral issues, and housed in a variety of restrictive environments for various periods of time. These factors not only complicate the resolution of the ultimate issue in this case, but they also portend a potentially dispositive flaw when viewed in the context of a qualified immunity analysis. Specifically, a clearly established right for potentially thousands of prisoners – who share few commonalities other than the mere fact of their incarceration – to collectively challenge and thus avoid the conditions of restrictive housing, does not exist.

For these reasons, qualified immunity is appropriate and should be applied on behalf of the Defendants as to the "Mental Health Damages Class" and "Prolonged Solitary Confinement Damages Class" Eight Amendment claims against Defendants contained in Counts I and II.

## VI.    CONCLUSION

Based on the foregoing, Commonwealth Defendants respectfully requests that this Court transfer this matter to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).  In the alternative, Commonwealth Defendants respectfully request that this Court strike Plaintiffs' class certification, pursuant to Fed. R. Civ. P. 12(f).   Lastly, in the alternative, Commonwealth Defendants respectfully request that this Court partially dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), pursuant to the terms laid forth in more detail, above.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

By:     s/ Sarina Kaplan
Sarina Kaplan
Senior Deputy Attorney General
Attorney I.D. No. 209738

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (267) 768-3964
Fax:    (717) 772-4526
skaplan@attorneygeneral.gov

Nicole R. DiTomo
Chief Deputy Attorney General
Civil Litigation Section

Date:  May 7, 2024

**CERTIFICATE OF SERVICE**

I, Sarina Kaplan, hereby certify that the attached Motion to Transfer, or in the alternative, Strike Class Certification, or in the alternative, Partially Dismiss, has been filed electronically on May 7, 2024, and is available for viewing and downloading from the Court's Electronic Case Filing System.

By    <u>    s/ Sarina Kaplan    </u>

| | |
|---|---|
| | Sarina Kaplan |
| Office of Attorney General | Senior Deputy Attorney General |
| 1600 Arch St., Suite 300 | Attorney I.D. No. 209738 |
| Philadelphia, PA 19103 | |
| Phone: (267) 768-3964 | Nicole R. DiTomo |
| Fax:    (717) 772-4526 | Chief Deputy Attorney General |
| skaplan@attorneygeneral.gov | Civil Litigation Section |