IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHALIL HAMMOND, et al., | : | Honorable Timothy J. Savage |
| Plaintiffs | : | |
| v. | : | No. 24-0922 |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | |
| Defendants | : | Filed Via Electronic Case Filing |

BRIEF IN SUPPORT OF THE DEFENDANTS' MOTION TO TRANSFER PURSUANT TO LOCAL RULE 40.1(c)(2) AND 28 U.S.C. § 1404(a)

Procedural History

Plaintiffs initiated this prospective class action with the filing of a complaint on March 4, 2024; the pleading was later amended on May 29, 2024. *See Documents Nos. 1, 29.* By their various claims for relief, Plaintiffs endeavor to stop the Pennsylvania Department of Corrections "from placing individuals with mental illness or psychiatric disabilities in solitary confinement." *Id., at ¶ 1.* The causes of action asserted include violations of the Eighth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act. *Id., at ¶¶ 396-417.*

Plaintiffs — Khalil Hammond, David Thompson, Antoine Walker, Muwsa Green, Tyrone Leonard and Malika Henderson — are individuals currently incarcerated at various institutions within the Pennsylvania Department of Corrections. Significantly, only Plaintiff Hammond is located within the area served by the Courts of the Eastern District of Pennsylvania. Defendants are the Pennsylvania Department of Corrections, Secretary of Corrections Laurel Harry,

1

former-Acting Secretary of Corrections George Little, Executive Deputy Secretary Michael Wenerowicz, Deputy Secretary for Reentry Lucas Malishchak, and Director of Psychology Brian Schneider. On May 31, 2024, current lead counsel entered their appearance on behalf of the Defendants, shortly thereafter withdrew a previously filed motion and sought an extension of time by which to respond to the amended complaint. *See Documents Nos. 33, 35, 36, 37.* Defendants now seek transfer of this matter to the Middle District of Pennsylvania.

## Statement of Alleged Facts

Plaintiffs contend that the Pennsylvania Department of Corrections employs long-term solitary confinement in several types of restrictive housing units. *See Document No. 29, ¶ 2.* According to the Plaintiffs, those restrictive housing units confine prisoners in "extremely small cells," for "as many as 21 to 24 hours every day," and in conditions that "exacerbate the symptoms" of mental illness. *Id., at ¶¶ 4, 7.*

## Standard of Review

In evaluating a request to transfer venue, the court must first determine whether venue is proper in this district under 28 U.S.C. § 1391. Generally, venue is proper only in: (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is

commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

The court next evaluates whether a transfer of venue is appropriate and warranted under 28 U.S.C. § 1404(a). Under 28 U.S.C. § 1404(a), a court may transfer venue to any other district court where the civil action might have been brought if it serves the interests of justice and the convenience of the parties. *See Rouse v. Harley-Davidson, Inc.*, No. 1:20-CV-528, 2021 WL 254065, at *2 (M.D. Pa. Jan. 26, 2021). "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (*quoting Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). Although the district court is given the ultimate discretion in transferring venue, the exercise of this discretion should not be liberal. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (*citing Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)).

Once the propriety of the proposed venue is determined, the court must then balance a variety of public and private interests, either weighing for or against transfer. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Pa. State Univ. v. Parshall*, No. 4:19-CV-12922, 2020 WL 2217279, at *3 (M.D. Pa. May 7, 2020). The Third Circuit Court of Appeals has identified the most

commonly considered private and public interest factors when deciding a motion to transfer venue. *Jumara*, 55 F.3d at 879.

As private interest factors, the court should consider: (1) plaintiff's original choice of forum; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties—indicated by their relative physical and financial condition; (5) the convenience of the witnesses—to the extent that the they may actually be unavailable for trial in either fora; and (6) the location of books and records—to the extent they cannot be produced in the proposed forum. *Id.* (internal citations omitted). In considering the public interest factors, courts contemplate: (1) the enforceability of the judgement; (2) practical considerations that could make the trial easy, expeditious, and inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with applicable state law in diversity cases. *Id.* at 879–80.

When weighing these public and private interests, the burden is on the movant to persuade the court that transfer is appropriate. *Shutte*, 431 F.2d at 25. "[U]nless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* (*quoting Owatonna Mfg. Co. v. Melroe Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)) (emphasis supplied).

<u>Statement of Question Presented</u>[1]

Should this Court grant Defendants' motion and transfer this case to the Middle District of Pennsylvania because a majority of the factors relevant to a transfer of venue consideration weigh in favor of granting the request?

<u>Argument</u>

This Court should grant Defendants' motion and transfer this case to the Middle District of Pennsylvania because a majority of the factors relevant to a transfer of venue consideration weigh in favor of granting the request.

Venue should be transferred from the Eastern District of Pennsylvania to the Middle District of Pennsylvania pursuant to § 1404(a). The Department of Corrections maintains its Central Office at 1920 Technology Parkway, Mechanicsburg, PA 17050, within the Middle District of Pennsylvania. All five of the named Defendants' current or previous principal place of business is the Department's Central Office. Currently, three of the five named Defendants also reside in the Middle District of Pennsylvania. *See Declaration of David Radziewicz, attached as Exhibit A, ¶¶ 19-23; see also Holt v. Pennsylvania*, 2018 WL 2363535, *11 (E.D. Pa. May 24, 2018) ("The residence of a state agency…is the state capitol even when branch offices of the state agency are maintained in other parts of the state.") (*citing Bentley v. Ellan*, 1990 WL 63734, at *1 (E.D. Pa. May 8, 1990)). *See also Dance v Commonwealth of Pa.* 2018 WL 3350392, at*3 (E.D. Pa. July 9, 2018) (holding that the Pennsylvania State Police resided where their central offices were located for purposes of venue).

---

[1] It is respectfully requested that the question presented be answered in the affirmative.

5

The vast majority of the actions and incidents of which Plaintiffs complain occurred outside of the Eastern District. The core of the amended complaint is an allegation that various types of restrictive housing units employ solitary confinement conditions. However, the overwhelming majority of those units are operated outside of the Eastern District. Indeed, of the twenty-four (24) institutions operated by the Department, only two are geographically located within the Eastern District — at SCI-Chester and SCI-Phoenix, respectively. *See Exhibit A, ¶¶ 12-14*.[2]

Throughout the Commonwealth, the Department maintains 23 standard restrictive units of the type referenced in the amended complaint, currently housing upwards of 1,500 inmates; only two of those units are operated within the Eastern District, and house only 181 inmates. *Id.* As defined in the amended complaint, the majority of the prospective class members within the "Mental Health Class" and "Mental Health Damages Class" are confined outside of the area served by the courts of the Eastern District. *Id., at ¶¶ 15-18*. The "Mental Health Class" potentially includes upwards of 1,082 prisoners, 940 of whom are confined outside of the area served by the courts of the Eastern District. *Id., at ¶ 16*. The "Mental Health Damages Class" potentially includes upwards of 18,000 prisoners, 16,003 of whom are confined outside of the area served by the courts of the Eastern District. *Id., at ¶¶ 17-18*.

---

[2] *See* Pennsylvania Department of Corrections Monthly Population Reports: https://www.cor.pa.gov/About%20Us/Statistics/Pages/Monthly-Population-Reports.aspx

The balance of public and private interest factors strongly favors Defendants' requested transfer. *See Jumara*, 55 F.3d at 879-80.

*Plaintiffs' Choice of Forum*

Plaintiffs chose to file this suit in the Eastern District of Pennsylvania. Though a plaintiff's choice is typically afforded significant weight, a "plaintiff's choice of forum becomes 'substantially less important' when he sues representatively on behalf of a class." *See Panitch v. Quaker Oats Co.*, 2017 U.S. Dist. LEXIS 51737 (E.D. Pa. April 5, 2017). Additionally, the significance of Plaintiffs' choice of forum should minimized because the overwhelming majority of the incidents they complain of occurred outside of their chosen forum. *See, e.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007); *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 564 (M.D. Pa. 2015); *McCraw v. GlaxoSmithKline*, No. CIV.A.12-2119, 2014 WL 211343, at *4 (E.D. Pa. Jan. 17, 2014); *J.L. Souser & Assocs., Inc. v. J&J Snackfood Corp.*, No. 06-CV-2043, 2007 WL 1217690, at *3 (M.D. Pa. Apr. 24, 2007). This factor weighs in favor of transfer.

*Defendants' Forum Preference*

Defendants' preference is to litigate this matter in the Middle District. The policies governing the challenged operations are drafted, revised, discussed, deliberated, approved and promulgated at the Department's Central Office, located within the Middle District. *See Exhibit A, at ¶ 5*. All Defendants utilize the Central Office as their principal place of business, while three of the Defendants

physically reside in the Middle District. *Id., at ¶¶ 19-22*. Additionally, Plaintiffs Leonard and Henderson are currently confined at institutions within the Middle District. *Id., at ¶ 23*. This factor weighs in favor of transfer.

*Whether the Claim Arose Elsewhere*

Plaintiffs' claims concern the placement and experience of prisoners in various restrictive housing units that allegedly employ solitary confinement-like conditions. As previously described, those units are operated by the Department throughout the Commonwealth, with only two of the 24 such units being geographically located within the Eastern District. *Id., at ¶¶ 12-14*. Further still, the vast majority of prospective class members reside outside of the Eastern District, and it can therefore be assumed that their claims thus arose elsewhere, as well. *Id., at ¶¶ 15-18*. Accordingly, the events giving rise to Plaintiffs' challenge of the Department's restrictive housing policies largely have not occurred within the Eastern District. *Id*. Indeed, only one prospective class representative resides in the area served by the courts of the Eastern District. *Id., at ¶ 23*. This factor weighs in favor of transfer.

*The Convenience of the Parties*

This factor requires the court to consider the respective burdens on the parties "as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Though Defendants will not suffer a significant physical or financial burden to litigate this case in either District, they will nonetheless likely be tasked with arranging and coordinating the transportation of class members to the

8

Eastern District. Because the vast majority of class members reside outside of that area, the Department will undoubtedly incur increased costs, and public funds will be unnecessarily expended. A more centralized venue could mitigate this concern. This factor weighs in favor of transfer.

*The Convenience of Potentially Unavailable Witnesses*

The convenience of the forum for witnesses and those witnesses' amenability to compulsory process are relevant factors. *See Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973). However, when considering the private interest factor of the relative convenience of witnesses, the focus is limited to the witnesses who may "actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Defendants are not currently aware of any witnesses that would likely be unavailable for trial in any of the fora. This factor is likely neutral.

*The Location of Books and Records*

The Department of Corrections is a Commonwealth Agency headquartered in Cumberland County. *See Exhibit A, at ¶ 3.* The Department's Central Office provides the workspace for all executive-level decision makers and is the site at which all policy records are maintained. *Id., at ¶ 5.* Other discoverable materials, including electronic correspondence, are maintained by the Office of Administration, located in Dauphin County, Pennsylvania. Prisoner records are kept at the institution where the individual is housed, meaning that the records of the vast majority of class members will be physically located outside of the Eastern District. *Id., at ¶ 9.* This factor weighs in favor of transfer.

*The Enforceability of the Judgment*

Defendants are not aware of any reason why this factor would present a concern in either forum. This factor is neutral.

*Practical Considerations*

This factor weighs heavily in favor of transfer. As aforementioned, the entire policy-making apparatus of the Department of Corrections exists within the Middle District. *Id., at ¶ 5*. A trial in the Middle District would eliminate unnecessary travel, lodging and personal expenses for Defendants and Commonwealth witnesses, and preserve substantial public funds that would otherwise be expended. This factor weighs in favor of transfer.

*The Relevant Court Congestion in the Competing Courts*

Defendants have no reason to believe that either District is significantly more or less busy than the other. However, because it serves a far more populous area, it is reasonable to believe that the Eastern District has a significantly higher caseload, and therefore potentially greater congestion, than the Middle District. If at all, this factor likely weighs in favor of transfer. *See, e.g., York Grp., Inc. v. Pontone*, No. CIV.A. 10-1078 WL 3735157, at *13 (W.D. Pa. July 28, 2014).

*The Local Interest in Deciding Local Controversies at Home*

Only one Plaintiff currently resides in the Eastern District, and most Defendants reside in the Middle District. *See Exhibit A, ¶¶ 19-23*. However, this factor likely weighs only slightly in favor of transfer since there is little competing

interest in deciding this controversy between neighboring Districts. *See Rouse*, 2021 WL 254065 at *6.

### *The Public Policies of the Fora*

This factor is likely neutral, since there likely exists few competing public policies between neighboring Districts.

### *The Familiarity of the Trial Judge with the Applicable State Law*

This factor is neutral.

Ultimately, the twelve *Jumara* factors weigh in favor of the requested transfer. Indeed, there are several factors that weigh heavily in favor of the transfer, while only a few arguably favor denying the transfer. Even Plaintiff's choice of forum, a factor that should weigh heaviest in favor of continuing litigation in the Eastern District, is diluted by the fact that an overwhelming majority of the constitutional violations of which Plaintiffs complain occurred outside of the Eastern District. This crucial factor, combined with the physical location of most parties outside of the Eastern District, as well as most of the units identified in the amended complaint, all suggest that a transfer to the Middle District is appropriate.

<u>Conclusion</u>

For all the above reasons, the Defendants respectfully request that the Court grant their motion to transfer venue to the Middle District.

        Respectfully submitted,

        Office of General Counsel

Joseph Fulginiti, Assistant Counsel
Attorney ID No.: 208039
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA  17050
Phone No.: (717) 728-7763
Office Cell: (717) 514-4912
E-mail: <u>josfulgini@pa.gov</u>

<u>/s/ Kelly J. Hoke</u>
Kelly J. Hoke, Assistant Counsel
Attorney I.D. No.: 202917
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA  17050
Phone No.: (717) 728-7749
E-mail: <u>kelhoke@pa.gov</u>

Date: July 16, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHALIL HAMMOND, et al., | : | Honorable Timothy J. Savage |
| Plaintiffs | : | |
| v. | : | No. 24-0922 |
| THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., | : | |
| Defendants | : | Filed Via Electronic Case Filing |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Court's ECF system and therefore simultaneously made available to all counsel of record.

*[signature]*

Joseph Fulginiti, Assistant Counsel
Attorney ID No.: 208039
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA  17050
Phone No.: (717) 728-7763
Office Cell: (717) 514-4912
E-mail: josfulgini@pa.gov

Date: July 16, 2024