## Exhibit A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHALIL HAMMOND, et al., | : | Honorable Timothy J. Savage |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | No. 24-0922 |
| | : | |
| THE PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, et al., | : | |
| | : | |
| Defendants | : | Filed Via Electronic Case Filing |

### DECLARATION OF ERIN BROWN

I, Erin Brown, hereby declare under penalty of perjury in accordance with 28 U.S.C. § 1746, that the following facts are true and correct based upon my personal knowledge or from my review of records routinely maintained in the operation of the Department of Corrections of the Commonwealth of Pennsylvania:

1. I am currently employed by the Commonwealth of Pennsylvania, Department of Corrections, as the Director of the Bureau of Population Management.

2. In this capacity, I oversee the management of all placements, transfers and separations of the Department's inmate population.

3. Counsel for the Defendants has advised me that this Court requires information regarding transporting inmates from state institutions to various federal courthouses.

4. The Department typically runs bus transports of inmates on Tuesdays and Thursdays.

5. Inmates the Department has classified as a security Level-5 or with an H-Code designation, are deemed high risk transports.

6. The Department's security policy defines Level-5 inmates as those who have demonstrated, through a pattern of escapes or attempted escapes, maladjusted or assaultive behavior, or through a need for protection, that they require a high degree of structure.

7. An H-Code is assigned to inmates that are high risk transports due to one or more of the following factors: assaultive behavior within the last 12 months; member of a security threat group; convicted of a forcible felony; escape history; IMU/SRTU; 10 or more years remain to serve; and/or serving a capital or life sentence.

8. Level-5 inmates must be placed in a security-enclosure seat on the bus. Therefore, these transports may only include between two and four Level-5 inmates, depending on which bus is available and the number of security seats on the bus.

9. In addition, the HUB located at SCI-Benner is the meeting point for the buses, which can accommodate a maximum of sixteen (16) Level-5 inmates at any given time, but that is only if those particular inmates are able to be double-celled.

2

10. An inmate on the restricted release list must be transported via an individual sedan trip directly to the receiving facility; these trips are scheduled based upon the availability of the transport team and the reason for the transfer.

11. Restricted release list inmates must be transported individually, escorted by three corrections officers.

12. Defendants' counsel has further advised that there are 1717 potential class members housed in the Department's all-female institutions at SCI-Muncy and SCI-Cambridge Springs.

13. The remaining twenty-two institutions maintained by the Department house the male inmate population.

14. Female inmates may not be housed in male institutions; therefore, should the Department be required to transport female inmates to the federal courthouse in Philadelphia for court proceedings, staff would be required to transport these inmates to and from the courthouse on a daily basis.

15. To transport female inmates to the federal courthouse in Philadelphia and back to SCI-Muncy is 316 miles roundtrip; transporting female inmates from SCI-Cambridge Springs would result in a roundtrip total of 766 miles.

16. When a Level-5 inmate is temporarily transferred to another institution, he must remain housed according to his security level designation and may not be housed in general population.

17. The institutions within the Eastern District of Pennsylvania near Philadelphia, are SCI-Chester and SCI-Phoenix.

18. Currently, SCI-Phoenix and SCI-Chester maintain a combined total of eighty-two (82) Level-5 beds that could potentially be utilized to house these class members in the Philadelphia area. However, filling every vacant bed in the restricted housing units, is not operationally feasible and would undermine the Department's daily operations at these facilities.

19. A combined total of two hundred and ninety-one (291) Level-5 beds could potentially be utilized at this time to house the class members near Harrisburg, at SCIs Camp Hill, Coal Township, Benner, Huntingdon, Rockview, Frackville and Mahanoy.

20. Prior to transferring inmates between institutions, I must ensure there are not any documented separations with other inmates or staff members at the receiving institution. I also must also ensure there are no medical or specialized housing restrictions at the receiving institution.

21. Assigning, scheduling and transporting inmates to a temporary facility is a lengthy process that includes reviewing each inmate to determine if they may be transferred to a particular facility and if there is bed space at the facility to accommodate the transfer.

22. The Department cannot maintain regular operations and staff the only two institutions near the federal courthouse in Philadelphia, should the court direct the transfer of a large number of inmates for court proceedings.

23. Housing Level-5 inmates at SCI-Chester is not a viable option as this course of action would present a security concern. SCI-Chester is designated

4

primarily for programing and does not house D roster inmates. Further, this institution maintains a small restricted housing unit, in which a number of the beds have security restrictions on which level of inmate may be housed there due to the location of the cells/beds.

24. Although SCI-Phoenix may have available bed space at any given point in time, transferring a large influx of inmates for court proceedings, particularly if those inmates are designated as Level-5 or other high-risk designations, poses significant staffing and security concerns for the Department.

25. Because there are no other institutions near SCI-Phoenix and SCI-Chester, the Department would be required to utilize staff from institutions, thereby requiring the Department to house these staff members in a hotel in the Philadelphia area, at an additional expense.

26. The Department would be in a better position to accommodate requests to transport the class members to court in Harrisburg because there are more potential housing options, including SCI-Camp Hill, SCI-Frackville, SCI-Mahanoy, SCI-Benner, SCI-Coal Township, SCI-Huntingdon and SCI-Rockview. These institutions have a greater staffing compliment and more available beds, in addition to the ability to accommodate separations and other housing concerns.

27. The Department typically transfers approximately 600 inmates each week, for a variety of reasons. Coordinating these trips, bed space, and prioritizing

the types of transfers, is necessary to continue daily operations in the Department.

28.   The use of the facilities near Harrisburg to accommodate the transfer requests in this class action, would be integral to maintaining the daily operations of the Department with respect to the other unrelated transfers that take place each week and to ensure these operations are not disrupted.


*Erin Brown*
Erin Brown
Director of the Bureau of Population Management
Pennsylvania Department of Corrections

Date:  November 14, 2014